IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| RICHARD C. FITZPATRICK, | ) | **CV210  062** |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| ANTHONY L. HARRISON, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The above named Plaintiff complaining of the Defendant alleges:

1.

Defendant is a resident of Glynn County, Georgia, and subject to the jurisdiction of this Court.

2.

Defendant was at all times mentioned herein a practicing attorney licensed in the State of Georgia with an office at 1515 Newcastle Street, Brunswick, Georgia 31520.

3.

Plaintiff is a resident of the State of Massachusetts and the within action pursuant to 28 U.S.C. § 1332 is based upon diversity of citizenship and the amount in controversy exceeds the jurisdictional limit of Seventy-five Thousand Dollars and 00/100 ($75,000.00)

## COUNT I: LEGAL MALPRACTICE

4.

Plaintiff realleges each and every allegation of paragraphs one through three (1-3) of the Complaint herein.

5.

Heretofore on or about March 16, 2006, Plaintiff, who was having domestic difficulties, was referred to the Defendant by his employer to seek counsel and advice. Plaintiff made an appointment to see Defendant and duly arrived at Defendant's office at the scheduled appointment time.

6.

Plaintiff met with Defendant behind closed doors at Defendant's office for approximately one hour, during which time Plaintiff discussed with Defendant his domestic situation involving his then wife, Anne McWhorter Allen ("Allen"), disclosing to him many confidential facts including his personal habits, those of Allen, financial information including assets of both Plaintiff and Allen, background information regarding both parties, all of which were intended to be and were received by Defendant as confidential information.

7.

Among the information that Plaintiff disclosed to Defendant during their closed door, confidential conference was the fact that Plaintiff's wife, Allen, had been widowed when her husband and son were killed in the explosion of TWA Flight 800 and she had

been compensated with a structured settlement which yielded her approximately $272,000.00 per year until 2011.

8.

Defendant gave advice to Plaintiff including advising him that it would be best to file suit in Cobb County, Georgia, rather than Glynn County, Georgia, provided his wife would consent due to the nature of the juries in Glynn County as opposed to Cobb County.

9.

At the conclusion of said conference, Plaintiff offered payment to Defendant. Defendant declined payment and advised Plaintiff of his retainer and should Plaintiff decide to proceed with a divorce at that time; Plaintiff advised that he would likely return the following day with a check, as he did not bring a check with him that day.

10.

Thereafter, Plaintiff was served with a Summons and Complaint in the matter of *Anne McWhorter Allen v. Richard C. Fitzpatrick,* Civil Action No. CE 06-01435-063 in the Superior Court of Glynn County, which Complaint sought a divorce and other relief, and the action was brought by the Defendant on behalf of Allen.

Also, on or about August 8, 2006, Plaintiff was served with a domestic violence warrant, charging him with domestic violence and placing a freeze on all of Plaintiff's assets. Again, the Defendant was Allen's attorney and secured the warrant for her.

11.

On information and belief, the Defendant undertook representation of Allen on the belief that she was far able to pay a larger fee to him than Plaintiff.

12.

By undertaking such representation of Allen, the Defendant clearly entered into a situation of conflict of interest and violated various Bar Rules of Professional Conduct, among which are the following:

Bar Rule 1.7 (a) (c) of the Bar Rules provides:

"(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interest or the lawyer's duties to another client, a former client, or a third person who would materially and adversely affect the representation of the client, except as permitted in (b).
(c) Client consent is not permissible if the representation:
(2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or (3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients."

Rule 1.8 (b) of the Bar Rules provides:

"(b) a lawyer shall not use information gained in the professional relationship with a client to the disadvantage of the client unless the client consents after consultation, except as allowed in Rule 1.6."

In the comments under Rule 1.8 [1B]:

"It is a general rule that an attorney will not be permitted to make use of the knowledge, or information, acquired by the attorney through the professional relationship with the client, or in the conduct of the client's business, to the disadvantage of the client."

Rule 1.6 (a) of the Bar Rules provides:

"(a) a lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client consents after consultation, except for disclosures that are impliedly

authorized in order to carry out representation, or are required by these rules or other law, or by order of the Court."

Rule 1.9 (a) (b) of the Bar Rules provides:

"(a) a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
(b) a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 Confidentiality and 1.9(c): Conflicts of Interest: Former Client, that is material to the matter; unless the former client consents after consultation."

13.

As a direct and proximate result of the Defendant undertaking to represent Allen after having interviewed Plaintiff and obtained confidential information from Plaintiff regarding their domestic and financial situation, all of which were disclosed to Defendant in anticipation of an attorney-client relationship and with the expectation of confidentiality, his subsequent representation of Allen damaged the Plaintiff and was the direct and proximate cause of Plaintiff's suffering loss of large sums of assets and being subjected to extreme pain, suffering and mental anguish, for which Defendant is liable.

14.

Defendant's conduct constituted legal malpractice and was the proximate cause of Plaintiff's damages.

**COUNT II:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

15.

Plaintiff realleges each and every allegation of paragraphs one through fourteen (1-14) of the Complaint herein.

16.

Plaintiff was forced to expend large sums of money for legal counsel to attempt to modify or dissolve the restraining order which was placed against him, freezing all of his assets, save a small sum, all of his personal property including his records and computer; he was forced from the family home and not allowed to retrieve clothing or personal effects and ultimately because all of his assets were frozen and he had no funds to continue to retain counsel and contest the divorce, he was forced to settle for far less that he would have been entitled to had he been able to contest the divorce.

17.

The Defendant intentionally sought to humiliate and to embarrass the Plaintiff by having him served with the domestic violence warrant and Summons and Complaint of the divorce action at his place of employment, in front of his employer and co-workers. As a direct and proximate result of said actions, Plaintiff was terminated from his employment and sole source of income thereof.

18.

Defendant's actions were willful and intentional and designed to inflict emotional pain and distress upon Plaintiff and Plaintiff is therefore, entitled to damages of intentional infliction of emotional distress.

19.

Defendants acts of malpractice are such that he should be punished and deterred from future such acts by being caused to pay punitive damages to Plaintiff.

20.

Attached hereto as Exhibit A is the Affidavit of Charles S. Hunter, Esquire, in compliance with O.C.G.A. § 9-11-9.1.

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

I. For the sum of $950,000.00 special damages for loss of employment, business income, joint account funds, and medical expenses due to extreme emotional stress;

II. For the sum of $1,000,000.00 general damages;

III. For a sum in excess of $10,000.00 punitive damages to deter future such conduct on the part of Defendant;

IV. For the costs of this action together with a reasonable attorney's fee to be paid to Plaintiff's attorney

V. For such other and further relief that this Court deems just and proper.

This 12 day of March, 2010.

_____
Julian H. Toporek
Attorney for the Plaintiff
Georgia State Bar No. 714700

221 West York Street
Savannah, Georgia 31401
912.236.4666 (telephone)
912.236.0105 (facsimile)